IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ELizabeth Miller, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-24-549-SM |
| ) | |
| CAROLYN COLVIN, ) | |
| ACTING COMMISSIONER ) | |
| OF SOCIAL SECURITY,[1] ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Elizabeth Miller (Plaintiff) seeks judicial review of the Commissioner of Social Security's final decision that she was not "disabled" under the Social Security Act. *See* 42 U.S.C. § 405(g). The parties have consented to proceed before the undersigned for disposition. Docs. 8, 9; *see* 28 U.S.C. § 636(c).[2]

Plaintiff asks this Court to reverse the Commissioner's decision and remand the case for further proceedings, arguing, first, that the Administrative Law Judge (ALJ) improperly considered her vision impairment

---

[1] Carolyn Colvin became the Acting Commissioner of the Social Security Administration on November 30, 2024. So the Court replaces Martin O'Malley as Defendant in this matter with Carolyn Colvin. *See* Fed. R. Civ. P. 25(d).

[2] Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the administrative record (AR) will refer to its original pagination.

and its resulting limitations, and second, that he improperly rejected her testimony about the same. Doc. 11, at 4.

After careful review of the AR, the parties' briefs, and the relevant authority, the undersigned agrees with Plaintiff and the Court reverses and remands the Commissioner's decision for further administrative proceedings.

## I.     Administrative determination.

### A.     Disability standard.

The Social Security Act defines a disabled individual as a person who "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just [the claimant's] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

### B.     Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that [s]he can no longer engage in h[er] prior work

activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff "retains the capacity to perform" a different type of work and that such a "specific type of job exists in the national economy." *Id.*

### C. Relevant findings.

#### 1. ALJ's findings.

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe. AR 11-24; *see* 20 C.F.R. § 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). The ALJ found Plaintiff:

(1) had not engaged in substantial gainful activity since her application date of December 29, 2020;

(2) had the following severe impairments: diabetes mellitus with neuropathy and ocular complication; cervical and lumbosacral spine strain with reported radiculopathy; bilateral shoulder strains; migraines; visual impairment including cataract, macular edema, and retinal detachment status post repair; depression disorder; and anxiety disorder;

(3) had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(4)     had the residual functional capacity[3] (RFC) to perform light work as defined in 20 C.F.R. § 416.967(b), except that she can only stand and/or walk a total of 4 hours in an 8-hour work day; she can no more than frequently stoop, kneel, crouch, and crawl, and no more than frequently reach, handle, finger, and feel; *she must avoid work requiring binocular vision and can occasionally perform work functions requiring depth perception and field of vision*; she can understand, remember, and apply both simple and detailed, but not complex, instructions; must avoid fast-paced quota-based work; and must avoid exposure to work hazards, such as unprotected heights and dangerous moving machinery;

(5)     has no past relevant work;

(6)     was able to perform jobs that exist in significant numbers in the national economy, including Cashier II, Dictionary of Occupational Titles (DICOT) 211.462-010; Counter Rental Clerk, DICOT 295.367-026; and Office Helper, DICOT 239.567-010;

(7)     had not been under a disability since December 29, 2020, the date the application was filed.

AR 12-24 (emphasis added).

### 2.     Appeals Council's findings.

The Social Security Administration's Appeals Council denied Plaintiff's request for review, *see id.* at 1-6, "making the ALJ's decision the

---

[3]     "[R]esidual functional capacity is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 416.945(a)(1).

Commissioner's final decision for [judicial] review." *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II. Judicial review of the Commissioner's decision.

### A. Review standard.

The Court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (internal citation omitted). "An agency decision that either applies an incorrect legal standard or is unsupported by substantial evidence is subject to reversal." *Staheli v. Comm'r, SSA*, 84 F.4th 901, 905 (10th Cir. 2023).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010)); *see also Lax*, 489 F.3d at 1084 (defining substantial evidence as "more than a scintilla, but less than a preponderance"); *Wall*, 561 F.3d at 1052 (explaining that "'[e]vidence is not substantial if it is overwhelmed by other evidence in the record'") (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005)). The Court "will not reweigh the evidence or substitute [its] judgment for the Commissioner's."

5

*Lax*, 489 F.3d at 1084. Thus, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

"[T]he failure to apply proper legal standards, may under the appropriate circumstances, be sufficient grounds for reversal independent of the substantial evidence analysis." *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quotations omitted). But the failure to apply the proper legal standard requires reversal only where the error was harmful. *Cf. Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (placing the burden to show harmful error on the party challenging an agency's determination).

### B. Substantial evidence does not support the ALJ's evaluation of Plaintiff's vision impairment.

Plaintiff claims "the ALJ improperly considered Ms. Miller's vision impairment and resulting limitations in the RFC, as well as her testimony regarding the same." Doc. 11, at 4. First, she gives some background:

> Ms. Miller has significant visual impairments which affect her ability to see. On November 24, 2020, Ms. Miller had surgery to repair a retinal detachment. R. 552. Unfortunately, she then required at least two more surgeries on the same left eye for this same issue. *See* R. 584, 593. In addition to these procedures on her left eye, she has also had surgery on her right eye to address non-clearing vitreous hemorrhaging. R. 568. Each eye has cataracts. R.

> 615. With regard to her left eye, Ms. Miller has suffered "superior loss" in visual acuity and she is only able to see hand motion at a distance. *Id.* Ms. Miller's right eye has a visual acuity of 20/80+2 for distance and 20/20-1 pinhole corrected vision. *Id.*

*Id.*

Plaintiff argues her injuries and surgeries have created visual limitations, including her substantial difficulty reading and seeing up close. *Id.* at 4-6. She maintains the ALJ "completely ignored" some of her visual limitations in crafting the RFC, and that he impermissibly "played doctor" in reaching his conclusion on other visual limitations. *Id.* at 6, 8.

The Commissioner argues that the ALJ recognized "that Plaintiff 'plainly needed some type of' limitations due to vision issues." Doc. 16, at 6 (quoting AR 21). She asserts that Plaintiff provided no "evidence dispositive of any vision limitations whatsoever." *Id.* at 11. Finally, she maintains that the ALJ reasonably discounted Plaintiff's testimony about her ability to see only at a distance, and that the jobs the ALJ relied on require no depth perception or field of vision. *Id.* at 12 & nn.8-9.

### 1. The ALJ's consideration of the relevant evidence.

The ALJ first determined that Plaintiff's vision impairment does not meet or equal one of the listed impairments. AR 15. In so doing, the ALJ concluded:

7

> She does not meet or equal listing 2.02 because her remaining vision in her better eye after correction is better than 20/200. Her right eye with correction showed a visual acuity of 20/80+ with no correction and 20/20-1 with pinhole correction (7F/74). Additionally, even though her right eye has had surgery and a documented cataract (14F/5), there is no evidence to support that the claimant has a visual efficiency percentage of 20 or less after best correction or a visual impairment value of 1.00 or greater after best correction. Thus, the claimant does not meet or equal listing 2.04.

*Id.*

In considering the State agency medical consultant's opinion, which limited Plaintiff to light work, the ALJ found that opinion not persuasive. *Id.* at 20 ("This opinion is not persuasive insofar as the medical record clearly supports the need for visual and manipulative limitations," and "[the medical consultant's] lack of further limitations is not consistent with the claimant's impaired visual acuity."). Similarly, the ALJ found the State medical consultant's opinion on reconsideration, which limited Plaintiff to light work with sitting and standing restrictions, unpersuasive because "the evidence supports further . . . visual . . . restrictions." *Id.* The ALJ concluded Plaintiff "plainly needs some type of accommodation for her vision impairments considering she can only see hand motion out of her left eye." *Id.* at 21.[4]

---

[4] The ALJ also noted that opinions Plaintiff received after surgeries (including a left eye surgery) were not persuasive because—according to the

The ALJ also considered a "To Whom it May Concern" letter dated May 9, 2023, from Plaintiff's treating physician. *Id.* at 21, 22. Related to vision, the letter stated Plaintiff "has migraines that mess with her vision and make it hard to see." *Id.* at 21-22, 860. The ALJ observed the statement was "not expressed in vocationally relevant terms" and lacked a function-by-function analysis of Plaintiff's work-related abilities. *Id.* at 22. He concluded that to the extent the statement recounted or restated Plaintiff's subjective complaints, which the ALJ considered in crafting the RFC, "it is generally persuasive." *Id.* He found the statement unpersuasive as to other non-visual related restrictions. *Id.*

Finally, the ALJ considered a third-party function report Plaintiff's sister completed, which claimed Plaintiff "no longer participated in hobbies she used to enjoy," including "baking, scrapbooking, and painting wooden crosses." *Id.* at 22, 247-53.

Plaintiff testified that she cannot really see out of her left eye, *id.* at 46, she has "a really hard time seeing up close," *id.* at 59, and that she "can't really read anymore," *id.* at 54. She does not drive, and she takes care of her children,

---

ALJ—they imposed short-term restrictions only needed during Plaintiff's immediate recovery. AR 21.

including her nonverbal autistic son. *Id.* at 52-53. She maintains her personal hygiene and can perform some household chores, such as vacuuming. *Id.* at 53.

In considering her testimony, the ALJ concluded that her statements about "the intensity, persistence, and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 18.

### 2. Substantial evidence does not support the RFC.

Plaintiff argues that "no medical opinion or medical evidence" shows that she "can occasionally perform work functions requiring depth perception or field of vision." Doc. 11, at 7. She argues she has "substantial difficulty reading and seeing up close." *Id.* at 6. So, in fashioning the RFC, the ALJ "played doctor," *id.* at 8, and overstepped his bounds "by substituting his medical judgment for that of a physician," *id.* (quoting *Winfrey v. Chater*, 92 F.3d 1017, 1022 (10th Cir. 1996)).

The Commissioner points to the objective evidence that Plaintiff's right-eye vision "improved to better than 20/80" after surgery. Doc. 16, at 7. And Plaintiff no longer sought treatment from her eye doctor in 2022 or 2023. *Id.* Plaintiff testified she could see "OK" with her glasses, and could engage in many activities of daily living, including caring for herself, her children, and

her household. *Id.* at 7-8. And, the Commissioner argues, "no medical source provided any work-related visual limitations." *Id.* at 8.

As noted, the ALJ crafted Plaintiff's RFC to restrict her from any work requiring binocular vision and limited functions that required depth perception and field of vision to occasional frequency. AR at 17. After considering Plaintiff's testimony and in explaining these restrictions, the ALJ noted:

> The claimant's visual impairments, diabetes mellitus with ocular neuropathy, and migraines necessitate a finding that she must avoid work requiring binocular vision and can only occasionally perform work functions that require depth perception and field of vision. The claimant has a history of retinal detachment that has necessitated multiple surgeries for her left eye (7F/11,43,52) and also needed surgery for her right eye due to non-clearing vitreous hemorrhaging (7F/27). The claimant's right eye has improved since surgery (7F/30, 35, 55), and she now has a right visual acuity of 20/80+2 for distance and a pinhole corrected vision of 20/20-1 (7F/74). Her left eye, however, has suffered a "superior loss" in visual acuity, and she can only see hand motion at a distance in that eye (7F/74). Both of her eyes have cataracts (7F/74, 14F/5).
>
> The claimant also has been on prescription medication for migraines and has reported having headaches (2F/9,13, 4F/51, 6F/20 9F/7). As eye strain can increase the risk for migraine headaches, the claimant should never work in a setting that requires binocular vision, *which is also supported by the superior loss of vision in her left eye. Additionally, while the claimant clearly has documented vision impairments, the evidence shows that her visual acuity is sufficient to perform work functions that require no more than occasional depth perception and field of vision.*

*Id.* at 18-19 (emphasis added).

In formulating a claimant's RFC, an ALJ may, "and indeed [is] required, to rely on *all* of the record evidence, including but not limited to medical opinions in the file." *Wells v. Colvin*, 727 F.3d 1061, 1071-72 (10th Cir. 2013) (citing SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996)). The record evidence an ALJ must rely on includes a claimant's medical history, medical signs, laboratory findings, the effects of treatment, reports of daily activities, lay evidence, recorded observations, and effects of symptoms. SSR 96-8p, at *5.

Further, the components of an RFC assessment need not "line up with an expert medical opinion" to have substantial evidentiary support. *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). "The ALJ, not a physician, is charged with determining a claimant's RFC from the medical record. We have thus rejected the argument that there must be specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category." *Id.* at 1288–89 (quoting *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) (internal alterations omitted)).

An ALJ may also reach a conclusion serving as a "middle ground" amid the various medical opinions. *See, e.g.*, *Smith v. Colvin*, 821 F.3d 1264, 1268

(10th Cir. 2016) (affirming the district court and concluding that when "[f]aced with the conflicting opinions, the administrative law judge adopted a middle ground."). But, unlike cases in which courts have upheld the "middle ground" approach, the ALJ here found none of the opinions regarding Plaintiff's vision to be persuasive. *Cf. Chapo*, 682 F.3d at 1288 ("[I]f a medical opinion adverse to the claimant has properly been given substantial weight, the ALJ does not commit reversible error by electing to temper its extremes for the claimant's benefit.").

The ALJ's resultant RFC moderated the more restrictive state agency opinions to account for Plaintiff's visual impairments. But the ALJ's conclusions were not based on opinion evidence, as he rejected all the opinions in the record. The Court agrees with Plaintiff that the ALJ's conclusions about her visual limitations serve as arbitrary limitations the ALJ chose as it is not clear which medical evidence—if any—the ALJ relied on to craft her RFC. Doc. 11, at 7. And while the vocational expert's selected jobs omit any need for depth perception and field of vision, *see* DICOT No. 211.462-010, 1991 WL 671840; DICOT No. 295.367-026, 1991 WL 672594; DICOT No. 239.567-010, 1991 WL 672232, those selected jobs were based on the ALJ's hypothetical, which stemmed from the RFC. AR 57. In addition, while the Commissioner notes

13

that, "[n]o medical source restricted Plaintiff based on deficits of depth perception or field of vision," Doc. 16, at 12-13 n.9, the ALJ found each medical source's opinion unpersuasive. AR 20-22. As much as the Commissioner points to Plaintiff's ability to perform household chores, take care of her children, and to only sometimes need help cooking, that alone is insufficient evidence on which to base an RFC. At bottom, "[t]he ALJ did not pick a middle ground, rather he chose what appears to be an arbitrary set of limitations." *Jones v. Kijakazi*, No. CIV-20-746-SLP, 2022 WL 2531809, at *3 (W.D. Okla. July 7, 2022).

### III. Conclusion.

For the reasons set forth above, the Court reverses and remands the Commissioner's decision for further administrative proceedings.

**ENTERED** this 12th day of December, 2024.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE